**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

---

**DR. LEONARD'S HEALTHCARE LLC,**

        **Plaintiff,**

        **v.**

**UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; KATHERINE TAI, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, ACTING COMISSIONER,**

        **Defendants.**

Court No. 22-__00342__-UNA

---

**COMPLAINT**

Plaintiff Dr. Leonard's Healthcare, LLC, by and through its counsel, alleges and states as follows:

**INTRODUCTION**

1.      This action concerns Defendants' unlawful and unjustified use of its authority to impose Section 301 tariffs on certain imported goods from the People's Republic of China that are covered by "List 3" and "List 4."

2.      On September 21, 2018, the Office of the United States Trade Representative ("USTR") imposed a third round of tariffs on products covered by a list commonly known as "List 3." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018). On August 20, 2019, USTR imposed a fourth round of tariffs, commonly

known as "List 4." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). The imposition of tariffs under List 3 and List 4 is unlawful.

3.      Pursuant to Section 301 of the Trade Act of 1974 ("Trade Act") (19 U.S.C. § 2411), the USTR investigated China's unfair intellectual property policies and practices. Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. 19 U.S.C. § 2414(a)(2)(B). USTR failed to issue List 3 or the subsequent List 4 within that time.

4.      Defendants promulgated the List 3 and List 4 tariffs in response to China's retaliatory duties and other unrelated issues separate from USTR's original investigation. Section 307 of the Trade Act (19 U.S.C. § 2417) does not permit USTR to expand the imposition of tariffs to other imports from China for reasons disconnected from the unfair intellectual property policies and practices it originally investigated under Section 301 of the Trade Act. Defendants' promulgation of List 3, and later List 4, was not a valid modification of its initial action because it was not based on the acts, policies, or practices covered by USTR's original investigation.

5.      The arbitrary manner in which Defendants implemented the List 3 and List 4 tariff action also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide sufficient opportunity for comment; (2) failed to consider relevant factors when making its decision; and (3) failed to connect the record facts to the choices it made.

6.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 3 or List 4.

2

## JURISDICTION

7.     The Court possesses subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action

commenced against the United States, its agencies, or its officers, that arises out of any law of the

United States providing for . . . tariffs, duties, fees, or other taxes on the importation of

merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

8.     Plaintiff Dr. Leonard's Healthcare, LLC, has made numerous entries of products

which are subject to the additional *ad valorem* duties under List 3 and List 4A, including articles

of apparel and clothing accessories classified in Chapters 61–62, Harmonized Tariff Schedule of

the United States ("HTSUS"); other made up textile articles classified in Chapter 63, HTSUS;

footwear classified in Chapter 64, HTSUS; and various other articles classified elsewhere in the

HTSUS, including furniture and household goods classified in Chapters 39, 42, 65, 70, 73, 76,

82, 84, 85, 87, 90 and 94, HTSUS.

9.     Defendant United States of America is the Federal Government of the United

States of America. Defendant United States of America received the disputed tariffs and is the

statutory defendant under the APA, 5 U.S.C. § 702, and 28 U.S.C. § 1581(i)(1)(B).

10.     The Office of the USTR is an executive agency of the United States charged with

investigating a foreign country's trade practices under Section 301 of the Trade Act and

implementing "appropriate" responses, subject to the direction of the President. USTR conducted

the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

11.     Defendant Katherine Tai is the U.S. Trade Representative. At the time decisions

were made to impose List 3 and List 4 duties, Ambassador Robert Lighthizer was the U.S. Trade

Representative and served as the director of the Office of the USTR.  In these capacities, he made

numerous decisions regarding List 3 and List 4. At the time of filing this Complaint, Robert E.

Lighthizer no longer holds the position of USTR or Director of the Office of the USTR. *See* Off.

of the USTR, *Biographies of Key Officials*, USTR, https://ustr.gov/about-us/biographies-key-

officials (last visited Mar. 16, 2021).

12.     Defendant U.S. Customs and Border Protection ("CBP") is the executive agency

of the U.S. Government responsible for collecting duties on imports. CBP collected payments

made by Plaintiff to account for the tariffs imposed by USTR under List 3 and List 4. At the time

the duties were initially imposed, Mark A. Morgan was the Acting Commissioner of the CBP. In

this capacity, he oversaw CBP's collection of duties paid by Plaintiff under List 3 and List 4. At

the time of filing this Complaint, Mark A. Morgan no longer holds the position of Acting

Commissioner of the CBP.

## STANDING

13.     Plaintiff Dr. Leonard's Healthcare, LLC, has standing to sue because it is

"adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C.

§ 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has

jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by

agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants

pursuant to List 3 and List 4 adversely affected and aggrieved Plaintiff Dr. Leonard's Healthcare,

LLC because it was required to pay these unlawful duties.

## TIMELINESS OF THIS ACTION

14.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two

years after the cause of action first accrues." 28 U.S.C. § 2636(i).

15.     Plaintiff contests action taken by Defendants that resulted in List 3 and List 4 and

Plaintiff's obligation to pay tariffs on imported items on List 3 and List 4. *See generally Notice*

*of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

16.    Plaintiff's claims accrued and continue to accrue upon liquidation of its entries subject to the List 3 and List 4 tariffs, at which time Defendants determined that Plaintiff's obligation to pay those tariffs to be final. Thus, Plaintiff has timely filed this action with respect to all such entries which were liquidated on or after the date two years prior to the date of the filing of this action, including all entries liquidated subsequent to the date of this filing.

17.    In the alternative, Plaintiff's claims accrued and continue to accrue upon its payment of deposits on the List 3 and List 4 tariffs at the time of entry. Plaintiff has timely filed this action with respect to all such entries filed within the previous two years of the date of the filing of this action, including all entries filed subsequent to the date of this filing.

## RELEVANT LAW

18.    Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice and "burdens or restricts United States commerce," USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id.* § 2411(b)(1), (c)(1)(B).

19.    Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

20.     Section 307 of the Trade Act, in relevant part, allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B)–(C). Section 307 further requires USTR to "consult with . . . representatives of the domestic industry concerned, and . . . provide opportunity for the presentation of views by other interested persons affected by the proposed modification or termination concerning the effects of the modification or termination and whether any modification or termination of the action is appropriate." *Id.* § 2417(a)(2).

## STATEMENT OF FACTS

### I.     USTR's Investigation

21.     On August 14, 2017, former President Trump directed the former USTR, Ambassador Lighthizer, to determine whether to investigate China's laws, policies, practices, or actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 14, 2017). According to the former President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

22.     On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:  China's Acts, Policies,*

6

*and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed.

Reg. 40,213 (Aug. 24, 2017).

23.     On March 22, 2018, USTR released a report announcing the results of its

investigation. Off. of the USTR, *Findings of the Investigation Into China's Acts, Policies, And*

*Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section*

*301 of The Trade Act of 1974*, USTR (Mar. 22, 2018), https://ustr.gov/sites/default/files/

Section%20301%20FINAL.PDF. USTR found that "China's acts, policies, and practices" related

to technology transfer, intellectual property, and innovation are "unreasonable" and "burden or

restrict U.S. commerce." *Id.* at 45. USTR based its findings on (1) China's use of foreign

ownership restrictions, foreign investment restrictions, and administrative licensing and approval

processes to pressure technology transfers from U.S. companies to Chinese companies; (2)

China's use of licensing processes to transfer technologies from U.S. companies to Chinese

companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic

investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain

technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147;

and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business

information, *id.* at 171. In its report, USTR did not quantify the burden or restriction imposed on

U.S. commerce by the investigated practices.

24.     On the same day, March 22, 2018, USTR published a "Fact Sheet" stating that

"[a]n interagency team of subject matter experts and economists estimates that China's policies

result in harm to the U.S. economy of at least $50 billion per year." Off. of the USTR, *Section 301*

*Fact Sheet*, USTR, https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/

2018/march/section-301-fact-sheet (last visited Mar. 17, 2021). USTR also indicated that, at

former President Trump's direction, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see also Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 22, 2018) (former President Trump's directive).

**II.    Lists 1 & 2**

25.    Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by lists commonly known as "List 1" and "List 2."

26.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered approximately 1,300 separate tariff lines with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." Off. of the USTR, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products*, USTR (Apr. 3, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

27.    On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, the list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

28.    At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products to "maintain the effectiveness of a $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712. USTR announced a proposed List 2 covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711–12.

29.    On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, including "279 tariff subheadings" with an "annual trade value . . . remain[ing] approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823–24 (Aug. 16, 2018).

## III.    List 3 and List 4

30.    After USTR announced the results of its investigation in March 2018, tensions between the governments of China and the United States escalated. In the following months, Defendants expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. *See* Off. of the USTR, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products*, USTR (Apr. 3,

2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr. Defendants did so for reasons untethered to the unfair practices that USTR had originally investigated.

**A.**     **List 3**

31.     Shortly after former President Trump directed USTR in March 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States.  In response, former President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." Admin of Donald. J. Trump, *Statement on Proposed Additional Tariffs Against China*, govinfo.gov (Apr. 5, 2018), https://www.govinfo.gov/content/pkg/DCPD-201800221/pdf/DCPD-201800221.pdf.

32.     When USTR finalized List 1 in mid-June 2018, former President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *See, e.g.*, Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion in Chinese Goods*, The Hill (June 15, 2018, 8:16 AM), https://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.'").

33.     On June 18, 2018, former President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2. Former President Trump acknowledged that China's threatened retaliatory "tariffs on $50

billion worth of United States exports" motivated his decision. The White House, *Statement from the President Regarding Trade with China*, U.S. Embassy & Consulates in China (June 18, 2018), https://china.usembassy-china.org.cn/statement-from-the-president-regarding-trade-with-china/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

34.     Acknowledging the purpose of the President's directive, USTR stated that it would design the newly "proposed tariffs to offset China's action," rather than to address any of the harms identified in its Section 301 investigation. Off. of the USTR, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action*, USTR (June 18, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

35.     China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018). *See, e.g.*, *China hits back after US imposes tariffs worth $34bn*, BBC News (July 6, 2018), https://www.bbc.com/news/business-44707253; Fred Imbert*, China slaps 25% tariffs on $16 billion worth of US goods*, CNBC, https://www.cnbc.com/2018/08/08/china-announces-25percent-tariffs-on-16-billion-worth-of-us-goods-including.html (Aug. 8, 2018, 1:46 PM).

36.     About a week after China imposed its first round of retaliatory duties, on July 17, 2018, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608–09 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under section 301(b) of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20–23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

37.     In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.* (because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)[,] . . . the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures,

USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id.*

38.     USTR's contemporaneous press statements confirmed that China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." Off. of the USTR, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action*, USTR (July 10, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

39.     That same day, former President Trump suggested that the United States' trade imbalance with China supported the decision. Over the following weeks, former President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations.

40.     Shortly thereafter, on August 1, 2018, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFF. OF THE USTR, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action*, USTR (Aug. 1, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

41.     On August 7, 2018, USTR, at the direction of former President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10

percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* Off. of the USTR, *Public Hearings on Proposed Section 301 Tariff List*, USTR (Aug. 17, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301 (modifying hearing schedule).

42.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both *initial and rebuttal* comments from the public. *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. OFF. OF THE USTR, *Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, Regulations.gov (July 17, 2018), https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, the public submitted over 6,000 comments, and 350 witnesses appeared at the six-day hearing. *Id.; see also Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).

43.     On September 17, 2018—eleven days after receiving final comments from the public—former President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." Admin. of Donald J. Trump, *Statement on United States Tariffs on Imports from China*, govinfo.gov (Sep. 17, 2018), https://www.govinfo.gov/content/pkg/DCPD-201800603/html/DCPD-201800603.htm. Once again, the former President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motivated his decision, pointing specifically to China's "recently imposed new tariffs." *Id.* He immediately promised to proceed with "phase three" of the plan— an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

44.     Following the former President's announcement, on September 21, 2018, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018). USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% *ad valorem* on January 1, 2019. *Id.* USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

45.     As legal support for its action, USTR cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, and practices, that are the subject of such

action has increased or decreased." *Id.* (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

46.     In the following months, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in March 2019, that it would delay the scheduled increase in the List 3 duty rate from 10% to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

47.     The trade negotiations ultimately stalled. In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations and the "lack of progress in discussions with China" as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek public comment; rather, it simply announced that the increase would occur. *Id.*

48.     In June 2019, USTR invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

49.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.     List 4**

50.     On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with another list—List 4—covering even more products subject to additional duties.  Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR explained that its

decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] . . . announce[ment of] further retaliatory action against U.S. commerce." *Id.*

51.     Similar to the process it followed for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id.* The public submitted nearly 3,000 comments. OFF. OF THE USTR, *Request for Comments: Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, Regulations.gov (May 17, 2019), https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, seven days before the deadline for written comments, and then it again limited witnesses to five minutes of testimony at the hearing.  *Id.*

52.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, former President Trump  announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*.

53.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches, commonly known as "List 4A" and "List 4B." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A and List 4B would impose a 10% *ad valorem* duty on goods worth roughly $300 billion, effective September 1, 2019 and December 15, 2019, respectively. *Id.* at 43,305. Once again, USTR did not address any of the nearly 3,000

comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

54.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's Section 301 investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.* at 43,304–05.

55.     Just ten days later, on August 30, 2018, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

56.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

57.     In the following months, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFF. OF THE USTR, *United States and China Reach Phase One Trade Agreement*, USTR (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-and-china-reach. During that time, Defendants declined to impose additional duties on imports covered by List 4B.

58.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR has granted exclusions.

## COUNT I: DECLARATORY JUDGMENT— VIOLATION OF THE TRADE ACT OF 1974

59.     Plaintiff incorporates by reference paragraphs 1 through 58 of this Complaint.

60.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

61.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4 tariffs.

62.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and . . . action by the United States is

appropriate." 19 U.S.C. § 2411(b)(1)–(2). USTR failed to predicate its action giving rise to List 3 or List 4 on any such determination.

63.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." *Id.* § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over 12 months after USTR initiated its underlying Section 301 investigation on August 18, 2017. And USTR's action giving rise to List 4 occurred in August 2019, well over 12 months after USTR initiated its Section 301 investigation.

64.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. *Id.* § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR originally investigated pursuant to Section 301 of the Trade Act.

65.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." *Id.* § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are "no longer appropriate," but rather only to delay, taper, or terminate such actions.

66.     Plaintiff Dr. Leonard's Healthcare, LLC is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

21

## COUNT II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

67.     Plaintiff incorporates by reference paragraphs 1 through 58 of this Complaint.

68.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2)(A)–(E).

69.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

70.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

71.     Defendants also promulgated List 3 and List 4 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.

## COUNT III: VIOLATION OF U.S. CONSTITUTION ARTICLE 1, SECTION 8

72.     Plaintiff incorporates by reference paragraphs 1 through 58 of this Complaint.

72.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and List 4 and usurped Congressional authority.

73.     The List 3 and List 4 tariffs are unconstitutional, because only Congress has the power to "[l]ay and collect [t]axes, [d]uties, [i]mposts and [e]xcises," U.S. Constitution, Article

I, Section 8, Clause 1, and "[t]o regulate Commerce with foreign Nations." U.S. Constitution, Article I, Section 8, Clause 3.

### COUNT IV: VIOLATION OF U.S. CONSTITUTION, DUE PROCESS CLAUSE

74.     Plaintiff incorporates by reference paragraphs 1 through 58 of this Complaint.

75.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Constitution, Fifth Amendment.

76.     The tariffs imposed by List 3 and List 4 tariffs are unconstitutional because they deprive Plaintiff of property without reasonable notice or a sufficient opportunity to be heard.

77.     Defendants promulgated and imposed the List 3 and List 4 tariffs without meaningfully addressing relevant factors, providing a sufficient opportunity for comment, or adequately explaining their rationale.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Leonard's Healthcare, LLC respectfully requests that this Court:

(1)     declare that Defendants' actions resulting in tariffs on products covered by List 3 and List 4 are unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

(3)     declare that the tariffs imposed under List 3 and List 4 are unconstitutional under the U.S. Constitution, Article I, Section 8, Clauses 1 and 3;

(4)     declare that the tariffs imposed under List 3 and List 4 are unconstitutional under the Fifth Amendment to the U.S. Constitution;

(5)     vacate the List 3 and List 4 rulemaking;

(6)      order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to

List 3 and List 4;

(7)      permanently enjoin Defendants from applying List 3 and List 4 against Plaintiff

and collecting any duties from Plaintiff pursuant to List 3 and List 4;

(8)      award Plaintiff its costs and reasonable attorney fees; and

(9)      grant such other and further relief as may be just and proper.


Dated: December 16, 2022                    Respectfully submitted,

                                            _/s/Richard A. Mojica_____
                                            Richard A. Mojica
                                            Mary Mikhaeel
                                            **Miller & Chevalier Chartered**
                                            900 16th Street NW
                                            Washington, DC 20006
                                            Phone: (202) 626-5800
                                            Fax: (202) 626-5801
                                            Email: rmojica@milchev.com
                                                       mmikhaeel@milchev.com

                                            *Counsel for Dr. Leonard's Healthcare, LLC*